```
               IN THE UNITED STATES DISTRICT COURT

                   FOR THE DISTRICT OF NEBRASKA

IRA R. LEON,                     )
                                 )
               Petitioner,       )         8:14CV16
                                 )
     v.                          )
                                 )
STATE OF NEBRASKA, and SCOTT     )         MEMORANDUM OPINION
FRAKES, Director of the          )
Nebraska Department of           )
Corrections,                     )
                                 )
               Respondents.      )
_____)
```

This matter is before the Court on respondents' Motion for Summary Judgment (Filing No. 13). Respondents argue that petitioner Ira Leon's ("Leon") habeas corpus action brought pursuant to 28 U.S.C. § 2254 must be dismissed because it is barred by the statute of limitations. The Court agrees.

## I.   BACKGROUND

### A.   Conviction and Sentence

The Court states the facts as they were recited by the Nebraska Supreme Court in *State v. Leon*, 781 N.W.2d 608 (Neb. 2010) (affirming state district court's denial of motion for DNA testing). See *Bucklew v. Luebbers*, 436 F.3d 1010, 1013 (8th Cir. 2006).

Leon was charged with first degree murder, robbery, and use of a weapon to commit a felony in the February 19, 1992,

death of Bettie Christensen. Leon had originally been charged with premeditated murder or, in the alternative, felony murder. But pursuant to a plea bargain, Leon agreed to plead no contest to premeditated first degree murder, robbery, and use of a weapon to commit a felony. In exchange, the State of Nebraska ("State") amended the information against Leon, striking that portion charging him with felony murder. The State also agreed not to seek the death penalty or the maximum terms of imprisonment for the robbery and use charges, and further agreed not to present any additional evidence at sentencing. Per the agreement, the State was permitted to ask the state district court for a minimum period of incarceration of 17 years in addition to Leon's life sentence for the first degree murder conviction.

In support of the no contest plea, the State alleged that at around 10:10 p.m. on February 19, 1992, Leon and another man, Stacey Fletcher, entered the Barn Store, a convenience store located in North Platte, Nebraska. Leon and Fletcher were in possession of two tire irons at the time they entered the store. Upon realizing that Leon and Fletcher were going to rob the store, Christensen, the store clerk, screamed and ran toward the back room. According to Fletcher, at that point, Leon began beating Christensen about the head. After Christensen was dead, Leon and Fletcher stole $400 to $500 in cash from the cash

register and left the store. They were later apprehended at a North Platte residence. The tire irons were recovered. Both tire irons tested positive for the presence of human blood. One tire iron also had hair resembling the victim's on it. In addition, a customer who entered the store at the time of the murder and robbery positively identified Leon.

Leon was sentenced to consecutive terms of life imprisonment for first degree murder, 12 to 25 years imprisonment for robbery, and 5 to 10 years imprisonment for use of a weapon to commit a felony. He did not file a direct appeal.

**B. Postconviction Motion and Appeal**

Leon filed a motion for postconviction relief in the state district court on January 28, 1993, which the state district court denied on August 20, 1993. (Filing No. 14-2 at CM/ECF pp. 1-6.) The Nebraska Court of Appeals affirmed the state district court's decision on April 21, 1994. (Filing No. 14-1 at CM/ECF p. 2.) Leon did not petition the Nebraska Supreme Court for further review.

**C. Motion for DNA Testing**

Leon filed a motion for DNA testing in the state district court on May 4, 2009. He alleged that DNA evidence would show Fletcher, not Leon, actually caused Christensen's death. (Filing No. 14-6 at CM/ECF pp. 1-3.) The state district

court denied the motion on June 15, 2009.  (*Id.* at CM/ECF pp. 4-7.)  The Nebraska Supreme Court affirmed the state district court's decision on April 23, 2010.  *Leon*, 781 N.W.2d at 608.

### D. Habeas Corpus Action

Leon filed his Petition for Writ of Habeas Corpus ("petition") in this Court on January 15, 2014 (Filing No. 1).  He filed an Amended Petition for Writ of Habeas Corpus ("amended petition") (Filing No. 8) on July 21, 2014.  Thereafter, respondents moved for summary judgment (Filing No. 13), arguing the petition and amended petition were barred by the relevant statute of limitations.  In response to the summary judgment motion, Leon argued that he is actually innocent of Christensen's murder and the robbery of the Barn Store (Filing No. 19).  Respondents submitted evidence of Leon's guilt in response to Leon's assertion of actual innocence, and the parties engaged in additional briefing (Filing Nos. 27, 28, and 30).  The Court has carefully reviewed all of the briefs and materials filed by the parties, and it considers this matter fully submitted for disposition.

### II.  ANALYSIS

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 110 Stat. 1214, establishes a one-year limitations period for state prisoners to file for federal habeas

-4-

relief that runs from the latest of four specified dates. 28 U.S.C. § 2244(d)(1). Here, it is undisputed that Leon filed his petition for federal habeas relief more than one year from any of these four dates. The questions the Court must consider in this case are whether (1) Leon may be excused from the procedural bar of the statute of limitations under the miscarriage of justice exception, and (2) the limitations period may be subject to equitable tolling.

The Court understands Leon's arguments with respect to both questions to be as follows: Leon is entitled to this Court's review of his habeas corpus action because of evidence he "discovered" on or about May 4, 2009. According to Leon, when the State turned over its work product to him as he prepared his motion for DNA testing, he discovered a statement made by Diane Sivits to police two days after Bettie Christensen's murder. Sivits, a Barn Store employee, reported to police that one day after the murder, she discovered $524 in cash and also a check initialed by Christensen inside the Barn Store within a candy box used to store empty money wrappers. Sivits stated she did not understand how the money was not found during a search of the Barn Store following the murder. She also stated she was asked by Barn Store managers to keep quiet about the money. (*See*

Filing No. 8 at CM/ECF pp. 46-47.)  Sivits's voluntary statement reads, in part:

> On 2-20-92 in the afternoon after 4:00 pm.  I was [as]ked by Dee Harold Barn Store manager to come in [an]d close.  After being there for a while everyone [l]eft. Leaving Dee and I alone[.]
>
> I went to bundle $20 bills in $100 wrappers [wh]en pulling out candy box containing the empty wrappers found $524 in cash $1-$20 and check initialed by [B]etty C. folded on top inside box.  I asked Dee what's [th]is? She called John Haines (store owner) explained [to] him we found some money it must be from [W]ednesday's drawer.  She told him if turned over to [p]olice they would keep it till end of trial.  This is [a]ll I heard of conversation.  I don't [k]now what happened to money.
>
> . . . .
>
> Later John came to store and quietly said [t]o me don't say anything about money the police [f]ound enough on the guy to nail him.
>
> I'm lost why it wasn't found in search [o]f premise[s].

(*Id.* at CM/ECF pp. 47-48.)

Leon argues Sivits's statement proves he did not rob the Barn Store.  Essentially, Leon argues the statement shows he cannot be guilty of killing Christensen under a felony-murder

-6-

theory because the statement proves no robbery occurred. In addition, Leon argues DNA evidence, if it were tested, would show he cannot be guilty of killing Christensen under a premeditated-murder theory because the DNA evidence would prove that Fletcher, not Leon, beat Christensen with the tire iron. (Filing No. 8 at CM/ECF p. 63; Filing No. 19 at CM/ECF p. 3.)

### A.  Actual Innocence

In *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1928 (2013), the Supreme Court held that a habeas petitioner who can show actual innocence under the rigorous standard of *Schlup v. Delo*, 513 U.S. 298 (1995), is excused from the procedural bar of the statute of limitations under the miscarriage of justice exception. A habeas petitioner, who seeks to overcome the statute of limitations upon a showing of "actual innocence," must support his allegations with "new, reliable evidence" that was not presented at trial and must show that it was more likely than not that, in light of the new evidence, no juror, acting reasonably, would have voted to find the petitioner guilty beyond a reasonable doubt. *Schlup*, 513 U.S. at 329.

The evidence offered by Leon in this action is the statement Diane Sivits made to police about the money she found at the Barn Store the day after the murder. This evidence is insufficient to satisfy the actual-innocence standard. First,

the evidence does not qualify as "new evidence." Evidence is new only if it was "'not available at trial and could not have been discovered earlier through the exercise of due diligence.'" *Osborne v. Purkett*, 411 F.3d 911, 920 (8th Cir. 2005) (quoting *Amrine v. Bowersox*, 238 F.3d 1023, 1029 (8th Cir. 2001)). The statement made by Diane Sivits to police was available to the defense prior to Leon's plea. Indeed, Leon argues in his petition that his counsel knew about Sivits's discovery of the money prior to the plea. (*See* Filing No. 8 at CM/ECF p. 71 ("Leon's counsel . . . knew that the money alleged stolen from the Barn Store February 19, 1992 was found in the store and in fact never stolen. How Leon's plea of no-contest was accepted is beyond belief[.]"); *id.* at CM/ECF p. 70 ("No one can believe that the county attorney, Leon's counsel, or the district court, did not know of [Diane Sivits' statement]. They hid its' existence and Leon obtained it only because he got lucky[.]").) In addition, prior to Leon's plea, the prosecution provided the defense with a list of witnesses expected to testify. This list explicitly refers to Diane Sivits and the fact that she made a statement to the police. (*See* Filing No. 24-2 at CM/ECF p. 105.) In short, evidence of Diane Sivits's statement is not new and would have been available at trial.

Second, even if the Court were to consider the statement as new evidence, any conflicting evidence about what was *specifically taken* from the Barn Store would be insufficient to establish Leon's actual innocence because a juror could still have concluded that Leon committed a robbery. Indeed, at Leon's plea, the prosecution's recitation of facts provided that witnesses would testify that Leon and the co-defendant "took money out of the *cash register* (emphasis added)" and left "with an undetermined amount of cash;" the Barn Store owner believing it to be "between four or $500 somewhere in that neighborhood." (Filing No. 24-8 at CM/ECF p. 46.) Moreover, respondents point to ample evidence in the record that Leon and the co-defendant robbed the store, such as statements by witnesses that Leon had a significant amount of cash when he returned from the Barn Store that he did not have prior to going to the Barn Store. (Filing No. 27 at CM/ECF p. 6.) *See Connolly v. Howes*, 304 Fed. Appx. 412, 418 (6th Cir. 2008) ("Because [the petitioner] is claiming actual innocence after having entered a no-contest plea, this Court considers 'any admissible evidence of petitioner's guilt even if that evidence was not presented during petitioner's plea colloquy[.]'") (quoting *Bousley v. United States*, 523 U.S. 614, 624 (1998)).

-9-

Leon argues the discovery of the money in the candy box proves no robbery occurred because the $524 found in the candy box is roughly the same amount he is accused of taking from the Barn Store. However, there is nothing in the record to suggest Leon was suspected of taking the specific money found in the candy box. Indeed, the discovery of the money in the candy box was made known to law enforcement two days after the murder occurred.

Leon has failed to show actual innocence under the rigorous standard of *Schlup v. Delo*. He has not presented this Court with new, reliable evidence that shows it was more likely than not that no juror acting reasonably would have voted to find him guilty beyond a reasonable doubt of Christensen's murder and the robbery of the Barn Store.

**B.   Equitable Tolling**

Here, the Court asks whether an extraordinary circumstance prevented Leon from filing his petition on time in this Court. Generally, a litigant seeking equitable tolling must establish two elements: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Walker v. Norris*, 436 F.3d 1026, 1032 (8th Cir. 2006).

The Court has carefully reviewed Leon's amended petition and his brief in opposition to respondents' summary judgment motion. He identified no extraordinary circumstance that prevented him from filing his petition in this Court within the limitations period. Leon has not demonstrated the applicability of equitable tolling, and there is no basis upon which the Court may excuse his failure to comply with AEDPA's statute of limitations.

### III. CERTIFICATE OF APPEALABILITY

A petitioner cannot appeal an adverse ruling on his petition for writ of habeas corpus under § 2254 unless he is granted a certificate of appealability. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A certificate of appealability cannot be granted unless the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. Daniel*, 529 U.S. 473, 484 (2000).

In this case, Leon has failed to make a substantial showing of the denial of a constitutional right. The Court is not persuaded that the issues raised in the petition or amended petition are debatable among reasonable jurists, that a court

-11-

could resolve the issues differently, or that the issues deserve further proceedings.  Accordingly, a certificate of appealability will not be issued in this case.  A separate order will be entered in accordance with this memorandum opinion.

DATED this 6th day of July, 2015.

BY THE COURT:

/s/ Lyle E. Strom

_____
LYLE E. STROM, Senior Judge
United States District Court

---

\* This opinion may contain hyperlinks to other documents or Web sites.  The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.  Likewise, the Court has no agreements with any of these third parties or their Web sites.  The Court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.